**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**S&S SALES, INC.**                                                             **PLAINTIFF**

VS.                                 **2:08CV00220-WRW**

**PANCHO'S MEXICAN FOODS, INC.**
**Successor in interest of merger with**
**PANCHO'S DISTRIBUTING CO. INC. and**
**PANCHO'S MANAGEMENT, INC. and**
**ASSOCIATED WHOLESALE GROCERS. INC.**                 **DEFENDANTS**

<u>**ORDER**</u>

Pending are Defendants' separate Motions for Summary Judgment (Doc. Nos. 17, 32). Plaintiff has responded,[1] and Defendants have replied.[2] For the reasons set out below, Defendants' Motions for Summary Judgment are DENIED.

**I.**     **BACKGROUND**

The following facts are undisputed.[3] Separate Defendant Pancho's Mexican Foods, Inc. ("Pancho's"), manufactures and sells food products. Plaintiff S&S Sales, Inc. ("S&S"), is a wholesale distributer of snack foods, including products manufactured by Pancho's. S&S alleges that it had an exclusive franchise agreement with Pancho's, and that Pancho's breached this agreement when it allowed Separate Defendant Associated Wholesale Grocers, Inc. ("AWG"), to begin distributing Pancho's products in S&S's territory.

---

[1] Doc. Nos. 23, 40.

[2] Doc. Nos. 36, 54.

[3] See Doc. Nos. 2, 4, 18, 21, 27, 31. Disputed facts are indicated.

1

In 1993, S&S purchased another distribution company, Murry Harris Distributers ("MHD").  MHD had distributed Pancho's products since 1981.  MHD, allegedly, had exclusive distribution rights of Pancho's products in the eastern half of Arkansas.  S&S claims to have bought those rights along with its purchase of MHD, and that Pancho's honored the exclusive distribution agreement up until it allowed AWG to begin distributing Pancho's products in 2008.

S&S operates out of a warehouse in Colt, Arkansas, where it stores snack foods for distribution to retail outlets.  Although seldom, S&S does sell some Pancho's products directly from the warehouse.  S&S's sales of Pancho's products, however, are principally the result of sales made by route drivers.  These "salesman" load products on a truck or van, take the products to S&S's retail customers, stock the retail customers' shelves, pick up any returns of damaged goods, and collect payments.

Aside from Pancho's sales to distributer companies like S&S, Pancho's also sells some products directly to customers.  Since 1999, Pancho's has sold products directly to Wal-Mart, and some of those products end up in Wal-Mart stores within S&S's alleged territory.[4]  Pancho's argues that these sales would have triggered the statute of limitations on all of S&S's claims in 1999, and that all of S&S's claims are now time-barred.

In 2008, Pancho's appointed AWG as a distributer to stores located in S&S's territory. S&S alleges that AWG sought this business relationship with Pancho's despite having knowledge of S&S's exclusive distributorship.  To date, AWG continues to sell Pancho's products throughout eastern Arkansas, and S&S's sales of Pancho's products has slowed or stopped altogether.

---

[4]Before Pancho's began selling directly to Wal-Mart, S&S distributed Pancho's products to the Wal-Mart stores in eastern Arkansas.

Based on Pancho's business deal with AWG, S&S sues Pancho's for violations of the Arkansas Franchise Practices Act ("AFPA"),[5] the Arkansas Deceptive Trade Practices Act ("ADTPA"),[6] as well as fraud, and civil conspiracy. Pancho's requests summary judgment asserting: (1) the AFPA does not apply to the business relationship between S&S and Pancho's; (2) because the AFPA does not apply to S&S's and Pancho's business relationship, any contracts between the companies are terminable at will; (3) all of S&S's claims are time-barred based on Pancho's sales to Wal-Mart beginning in 1999; (3) because S&S's tort claims are time-barred, there is no underlying tort upon which to base a claim for civil conspiracy; and (5), all of S&S's claims are barred by the equitable doctrine of laches.

S&S also has sued AWG for intentional interference with a contractual relationship or business expectancy, violations of the ADTPA, unjust enrichment, and civil conspiracy. AWG requests summary judgment on all claims.

## II.  STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[7] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[8]

---

[5] Ark. Code Ann. §§ 4-72-201, *et seq*.

[6] Ark. Code Ann. §§ 4-88-107, *et seq*.

[7] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[9] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[10] I must view the facts in the light most favorable to the party opposing the motion.[11] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[12]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[13]

### III. PANCHO'S MOTION FOR SUMMARY JUDGMENT

#### A. An Issue of Fact Exists as to Whether the AFPA Applies

Pancho's claims that the AFPA does not apply because S&S was not a "franchise" of Pancho's. The AFPA defines franchise as follows:

---

[9] *Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[10] *Id.* at 728.

[11] *Id.* at 727-28.

[12] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[13] *Anderson*, 477 U.S. at 248.

>A written or oral agreement for a definite or indefinite period in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic within an exclusive or nonexclusive territory or to sell or distribute goods or services within an exclusive or nonexclusive territory at wholesale or retail, by lease agreement, or otherwise.[14]

The Act applies only if the performance of the franchise "contemplates or requires the franchise to establish or maintain a place of business within the State of Arkansas."[15]

Pancho's argues that Pancho's and S&S did not contemplate that S&S would maintain a "place of business" in Arkansas.[16] Pancho's points to the fact that S&S has provided no documentation or contract between the parties that mentions a requirement that S&S establish a "place of business."[17] Pancho's also points to testimony of an S&S corporate representative saying Pancho's never instructed S&S to maintain a "place of business."[18] The lack of explicit contractual language or instruction, however, does not make Pancho's case for summary judgment. A contract is not needed to create a franchise,[19] and Arkansas courts have held that a franchise agreement can either explicitly or implicitly require performance from a fixed physical location.[20]

Here, the disputed facts suggest that both parties could have contemplated that S&S would maintain a distributorship operation in Arkansas. S&S claims to have an exclusive

---

[14] Ark. Code Ann. § 4-72-202(1)(A).

[15] Ark. Code Ann. § 4-72-203.

[16] Doc. Nos. 17, 18.

[17] *Id*.

[18] *Id*.

[19] *South Beach Bev. Co. v. Harris Brands, Inc*., 138 S.W.3d 102 (Ark. 2003) (holding that the parties created a franchise relationship even though there was no signed contract).

[20] See *Dr. Pepper Bottling Co. v. Frantz*, 842 S.W.2d 37 (Ark. 1992).

5

distributorship based on the business it purchased from MHD in 1993.  Pancho's had been doing business with MHD for over a decade before S&S took over MHD's distributorship.[21]  Throughout that decade, MHD apparently maintained a central distributorship location in Arkansas.[22]  So, Pancho's previous course of business with MHD's may have resulted in both S&S and Pancho's implicitly contemplating that S&S would continue a centralized operation in Arkansas.  Interpreting the record favorably to S&S, and absent explicit contractual language to the contrary, the record establishes a material disputed fact about whether Pancho's and S&S contemplated that S&S would maintain a "place of business" in Arkansas.[23]

Pancho's next argues that, even if the parties contemplated that S&S would maintain a "place of business," S&S's warehouse does not meet the standard of a "place of business" as defined by the AFPA.[24]  The Act defines "place of business" to mean a "fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services."[25]  Pancho's argues that S&S's warehouse does not meet this standard.  In support of this argument, Pancho's points to the fact that S&S's warehouse has no signage, no posted hours of operation, and, allegedly, does not display Pancho's products at the warehouse.[26]  But, Pancho's admits that S&S has sold at least some Pancho's products from

---

[21]Doc. No. 19.

[22]*Id*.

[23]See *Otto Dental Supply, Inc. v. Kerr Corp.*, No. 4:06CV01610-WRW, 2008 WL 410630 (E.D. Ark. Feb 13, 2008) (denying summary judgment on similar facts).

[24]Doc. Nos. 17, 18.

[25]Ark. Code Ann. § 4-72-202.

[26]Doc. Nos. 17, 18.

its warehouse,[27] and S&S offers evidence that it does, in fact, display Pancho's products at the warehouse.[28] Based on these facts, there are issues of disputed fact about whether S&S's warehouse operations constitute a "place of business" under the AFPA.

Defendant's Motion for Summary Judgment based on the argument that the AFPA does not apply in this case is DENIED.[29]

### B. S&S's Claims Are Not Time-Barred as a Matter of Law

Pancho's next argues that even if the ARPA does apply, summary judgment is proper because all of S&S's claims are time-barred. Both the ADTPA and the ARPA's have a five-year statute of limitations, and the fraud and deceit claims have a three-year statute of limitations. Pancho's argues that S&S has been aware of Pancho's own "distribution" to Wal-Mart since 1999, and that these sales triggered the statute of limitations more than five years ago.[30] Pancho's argument fails because the record does not support a finding as a matter of law that Pancho's direct sales to Wal-Mart violated the alleged exclusive distributorship agreement.

Pancho's does not provide sufficient facts (or case law) showing how direct sales between Pancho's and Wal-Mart is factually or contractually analogous to Pancho's sales to a middleman distributorship like S&S. On the other hand, S&S persuasively argues that Pancho's

---

[27]*Id.*

[28]Doc. No. 23. Pancho's argues that S&S does not display Pancho's products at their warehouse, based on deposition testimony from S&S representatives who state that there is not "a Pancho's display" in their warehouse. Pancho's argument seems to confuse the noun and verb forms of the word "display." That is, S&S can display Pancho's products without having a Pancho's display, which seems consistent with the deposition testimony relied upon by Pancho's.

[29]As a result, Pancho's Motion for Summary Judgment based on the argument that, since the AFPA does not apply, any contracts between Pancho's and S&S are terminable at will is also DENIED.

[30]*Id.*

7

x

sales to AWG are similar to Pancho's sales to S&S, as both AWG and S&S operate as "middlemen" between manufacturers and retailers.[31] So, depending on the nature of the alleged agreement between Pancho's and S&S, Pancho's could have breached a duty to S&S by doing business with AWG (in 2008 -- well within the statute of limitations for all claims) that was not breached by Pancho's direct sales to Wal-Mart. Put another way, so long as issues of material fact exist about the details of the alleged agreement between S&S and Pancho's, I cannot say as a matter of law that S&S was put on notice of any claim against Pancho's based on Pancho's sales to Wal-Mart.[32] Accordingly, Pancho's Motion for Summary Judgment based on S&S's claims being time-barred is DENIED.

### C. Civil Conspiracy

Pancho's argues that since S&S's underlying tort claims are time-barred there is no underlying tort upon which to base a civil conspiracy claim. But, because I have found that S&S's tort claims are not time-barred as a matter of law, Pancho's Motion for Summary Judgment on the civil conspiracy claim is DENIED.

---

[31] AWG is a corporation owned by independent grocery stores in the South and Midwest. Doc. No. 32. AWG purchases items sold in grocery stores – bakery goods, deli items, produce, and meat – and offers those products for sale at a slight markup to its members. *Id.* AWG's members can chose to purchase from other distributers. *Id.* So, while AWG's business model is not identical to that of S&S, both companies do act as non-exclusive middlemen between manufacturers and retailers.

[32] The same goes for Pancho's direct sales to Kroger. Also, in its reply, Pancho's makes a similar argument based on the affidavit of Mr. Patrick Siano, operator of a competing distributorship that is factually similar to S&S, and which allegedly sold products to stores in eastern Arkansas from the 1970's through about 1999. Doc. No. 36. S&S, however, has submitted an affidavit of its own which raises a material issue of fact about the allegations in Mr. Siano's affidavit. See Doc. Nos. 39, 49. These opposing affidavits make summary judgment improper.

8

### D.     S&S's Claims Are Not Barred by Laches

Finally, Pancho's argues that summary judgment is proper under the equitable doctrine of laches. The defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."[33] Relying again on its dealings with Wal-Mart in 1999, Pancho's essentially argues that S&S sat on its rights, prejudicially resulting in Pancho's inability to find enough clearheaded witnesses to defend themselves against claims that are dependant on facts going back to 1981 (when MHD allegedly became an exclusive distributer of Pancho's products). But, for the reasons discussed above regarding the statute of limitations argument, the record does not conclusively establish that S&S lacked diligence regarding Pancho's dealings with Wal-Mart.[34] Pancho's request for summary judgment based on laches is DENIED.

## IV.    AWG'S MOTION FOR SUMMARY JUDGMENT

S&S has also sued AWG for its role in the events leading to the lawsuit against Pancho's. S&S brings claims of intentional interference with a contractual relationship, violations of the ADTPA, unjust enrichment, and civil conspiracy.[35] AWG seeks summary judgment, but S&S has demonstrated material issues of fact remain as to all claims.

It is worth noting up front that the summary judgment arguments between AWG and S&S revolve mainly around the deposition testimony of two key witnesses. On the one hand, AWG submits the deposition testimony of Terry Duffie ("Duffie"), a buyer for AWG. On the

---

[33]*Costello v. United States*, 365 U.S. 265, 282 (1961).

[34]Also, nothing in the record indicates that this case involves an *inequitable* disappearance of witnesses or evidence -- that is, I am sure both parties are equally effected by the long history of this case.

[35]Doc. No. 2.

9

other hand, S&S submits the deposition testimony of Tim Wallace ("Wallace"), General Manager of Pancho's. Wallace and Duffie are the persons ultimately responsible for the business deal between AWG and Pancho's.

AWG submits Duffie's testimony to establish that, while AWG knew there was a distributor of Pancho's in the eastern-Arkansas market, it did not know that distributor was S&S, or that S&S claimed to have the exclusive right to distribute Pancho's products in eastern Arkansas.[36] Through Duffie's testimony, AWG essentially seeks to establish that it could not be liable on any of S&S's claims because AWG did not know of S&S's alleged agreement with Pancho's.

S&S submits Wallace's testimony to refute Duffie's testimony. Wallace testifies, on behalf of Pancho's, that AWG did in fact know that S&S was a distributor claiming an exclusive distributorship.[37] Wallace testifies that AWG first approached Pancho's in 2006, but that due to concerns about Pancho's agreement with S&S, it declined AWG's advances -- possibly on the advice of Pancho's legal counsel -- and informed AWG of their reasoning.[38] Wallace's testimony also indicates that Wallace told AWG it could carry Pancho's products so long as AWG avoided selling to stores in S&S's alleged territory, and that AWG declined this offer. This evidence, taken as true, tends to demonstrate that AWG was not only aware of S&S, but also that AWG knew Pancho's was complying with some exclusivity arrangement with S&S.

According to Wallace's testimony, after Pancho's declined to sell to AWG in 2006, Duffie continued contacting Pancho's until 2008, and Pancho's was experiencing increasing

---

[36]Doc. No. 35.

[37]Doc. Nos. 40, 42.

[38]*Id.*

financial pressure to go with AWG.[39] Wallace's testimony also repeatedly mentions that AWG knew that S&S's business would be hurt by a deal between AWG and Pancho's.[40] Finally, S&S presents some testimony from Wallace tending to indicate that Wallace believes AWG is being dishonest in denying its knowledge of S&S's relationship with Pancho's.[41]

Before individually addressing each of S&S's claims against AWG, I note that (taking the conflicting testimony between Duffie and Wallace in a light most favorable to S&S) an issue of material fact exists about the general nature of AWG's pursuit of Pancho's business, and that this conflicting testimony tends to undercut all of AWG's arguments for summary judgment.

    **A.**    **AWG's Violation of the ADTPA**

The ADTPA[42] makes illegal any trade practice that is unconscionable, which includes conduct violative of public policy or statute.[43] S&S alleges that AWG conspired with Pancho's to interfere with S&S's franchise agreement with Pancho's, and that AWG's actions in this respect were unconscionable.[44] An "unconscionable" act is an act that "affront[s] the sense of justice, decency, or reasonableness."[45] In response, AWG argues that the deposition testimony of Duffie refutes the allegation that AWG knew S&S claimed an exclusive distributorship right to Pancho's products.[46] In response, S&S points to Wallace's conflicting testimony, arguing that

---

[39]*Id.*

[40]*Id.*

[41]*Id.*

[42]Ark. Code Ann. § 4-88-107(a)(10).

[43]*Baptist Health v. Murphy*, 226 S.W.3d 800, 811 (Ark. 2006).

[44]Doc. Nos. 2, 40.

[45]*Baptist Health*, 226 S.W.3d at 811.

[46]Doc. No. 32.

the issue of whether AWG's conduct rises to the level of "unconscionable" is a question for the jury.[47] I agree. AWG's Motion for Summary Judgment as to S&S's ADTPA claim is denied.

### B. Tortious Interference

To establish a tortious interference claim under Arkansas law, S&S must prove: (1) the existence of a valid contractual relationship or a business expectancy with Pancho's; (2) knowledge of the relationship or expectancy on the part of AWG; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy between S&S and Pancho's; and (4) resultant damage to S&S due to the disruption caused by AWG.[48] AWG argues that S&S has not established a genuine issue of material fact as to any of these elements. I disagree.

As for element 1 (existence of a valid contractual relationship or a business expectancy) my findings above have already noted that S&S has established a genuine issue of material fact about whether a contractual relationship or business expectancy existed between S&S and Pancho's.[49]

As for element 2 (knowledge of the contractual relationship or business expectancy), Wallace's testimony creates a genuine issue of material fact that AWG did know of S&S's agreement with Pancho's.[50]

---

[47]Doc. No. 42.

[48]See *Vowell v. Fairfield Bay Community Club, Inc.*, 58 S.W.3d 324, 329 (Ark. 2001); *Mason v. Wal-Mart Stores, Inc*., 969 S.W.2d 160 (Ark. 1998) (adding the "improper" factor to element 3).

[49]I note, too, that the standard for meeting the "business expectancy" prong is low compared to that of the "contractual relationship" prong, in that "[a]ny business relationship that would be of pecuniary value constitutes a valid business expectancy." *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 215 S.W.3d 596, 603 (Ark. 2005).

[50]See Doc. No. 32.

As for element 3 (whether an interfering actor's conduct is "improper"), the fact finder must weigh numerous factors, including the actor's motive, the nature of the actor's conduct, and the social interests in protecting the interests of the other parties, to determine whether the actor's conduct is "improper."[51] Given Wallace's testimony, and the disputed motives and conduct involved in AWG's dealings with Pancho's, summary judgment is improper.[52]

Finally, as for element 4 (resultant damage), S&S has provided evidence that, after AWG began distributing Pancho's products within the region of the alleged exclusive distributorship, S&S experienced reduced sales of Pancho's products to AWG's member stores.[53] This much establishes a genuine issue of material fact on the issue of resultant damages.

Because issues of material fact exist as to all the elements of tortious interference, AWG's request for summary judgment on that claim is denied.

### C.   Unjust Enrichment & Civil Conspiracy

Finally, AWG argues that, because they are entitled to judgment as a matter of law on both the ADTPA and intentional interference claims, there is no underlying tort or improper conduct on which to base an unjust enrichment or civil conspiracy claim. Because I have denied

---

[51] See *Mason v. Wal-Mart Stores, Inc.*, 969 S.W.2d 160 (Ark. 1998).

[52] For similar reasons, AWG's request for summary judgment on the defense of privilege fails. I cannot say as a matter of law that AWG did not act in "bad faith," as required for the defense of privilege. Also -- apparently to give the privilege defense traction -- AWG re-casts S&S's claim as one of interference between S&S and AWG's member stores. Rather, S&S alleges AWG interfered with the relationship between S&S and Pancho's. AWG's privilege arguments do not adequately address privilege in regards to that relationship.

[53] Doc. No. 32. Here again, AWG attempts to re-cast the issue as interference between S&S and AWG's member stores, claiming that AWG's member stores were free to purchase from whomever they chose. These arguments miss the point that AWG was only permitted to sell Pancho's products to its member stores as a result of the alleged breach of agreement between Pancho's and S&S.

13

summary judgment on both the ADTPA and intentional interference claim, summary judgment on the unjust enrichment and civil conspiracy claims is not proper.[54]

## CONCLUSION

For the reasons set out above, Defendants' Motions for Summary Judgment (Doc. Nos. 17, 32) are DENIED.

IT IS SO ORDERED this 3rd day of March, 2010.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[54] AWG also briefly argues that neither claim has a disputed factual basis. However, the facts establishing a genuine issue of material fact on the ADTPA and intentional interference claims also raise an issue of fact with respect to the unjust enrichment and civil conspiracy claims. Summary judgment is not appropriate.